**UNITED MEAT CO., Inc. v. RECONSTRUCTION FINANCE CORPORATION.**

**FEDERATED MEAT CORPORATION v. RECONSTRUCTION FINANCE CORPORATION.**

Nos. 9844, 9845.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 9, 1949.

Decided April 25, 1949.

Messrs. Thurman Arnold and Milton V. Freeman, both of Washington, D. C., for appellants.

Mr. George A. Fruit, of Champaign, Ill., pro hac vice by special leave of Court, with whom Mr. George Morris Fay, United States Attorney, of Washington, D. C., Mr. Joseph M. Friedman, Special Assistant to the Attorney General, and Mr. Alexander Boskoff, Attorney, Department of Justice, of Washington, D. C., were on the brief, for appellee. Mr. Stafford R. Grady, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PRETTYMAN, and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellants filed civil actions in the District Court for recovery of livestock slaughter payments, commonly called meat subsidies, alleged to be due them under the Government's program authorized by the Emergency Price Control Act of 1942 [1] and a Directive (No. 41) of the Office of Economic Stabilization. The plaintiffs al-

---

[1] 56 Stat. 24, as amended, 58 Stat. 632, Act June 30, 1944, 50 U.S.C.A.Appendix, § 902(e).

leged that during 1945 and 1946 they became entitled to various payments under the program, and that the defendant was withholding, in the case of United Meat Company, $218,348,99 and, in the case of Federated Meat Corporation, between $400,000 and $500,000. The defendant, Reconstruction Finance Corporation, answered the complaints and also set up affirmative defenses and counterclaims. The plaintiffs replied to the counterclaims and submitted interrogatories to the defendant. These interrogatories were answered with documents, sworn statements, and a deposition given orally. The plaintiffs filed motions for summary judgments, with affidavits and exhibits attached to the motions. Plaintiff Federated Meat Corporation prayed judgment in the sum of $169,921.27 plus interest and costs, and plaintiff United Meat Company prayed judgment in the amount of $225,573.66 plus interest and costs. The District Court denied the motions. We allowed special appeals. The cases were consolidated for hearing and disposition.

The question before us is whether there are in the case any genuine issues of material fact.[2] If so, the order of the District Court must be affirmed. Appellants say that while there are issues of fact reflected in the pleadings, they are immaterial.

The controversy involves a long and complicated series of facts and an equally long and complicated series of Governmental regulations. The plaintiffs were in conflict with the Office of Price Administration from the time they were organized, Federated on December 27, 1944, and United on January 4, 1945, until meat was decontrolled on October 15, 1946. Three civil actions for violations of price regulations were brought against Federated and three against United in the District Court for the Eastern District of New York. None of those cases proceeded to final disposition. Preliminary injunction against Federated was granted by the District Court in one case, and that judgment was affirmed by the Court of Appeals for the Second Circuit.[3] The latter court found no error in the trial court's findings that the plan of reorganization of Federated was adopted in order to circumvent the maximum price regulations, and it concluded that in either suggested aspect of the legal situation, the arrangement under which the meat was sold violated the terms of those regulations. After meat was decontrolled, all of these civil cases were dismissed. Criminal proceedings were brought against the plaintiffs by information in the Eastern District of New York. They were dismissed in July, 1946, upon motions of the Assistant United States Attorney, because "the Government finds it has no proof to prove willfulness". Twelve complaints were filed against each of these appellants in the War Emergency Court in Brooklyn, New York, the charges being dismissed by the court, without prejudice, for lack of jurisdiction.

The regulations pertinent are, principally, Revised Regulation No. 3 of the Defense Supplies Corporation (a wholly owned subsidiary of Reconstruction Finance Corporation), promulgated April 9, 1945,[4] with its amendment, effective May 5, 1945,[5] and Directive No. 41, issued April 23, 1945, by the Director of the Office of Economic Stabilization,[6] with its amendments, particularly Amendment 11 issued April 8, 1947.[7] The plaintiffs say that their claims are governed by the provisions of the directive. The Government contends that the directive was not intended to, and did not, supersede the regulation, but that the merits of actions respecting meat subsidy claims are controlled by the regulations of the Reconstruction Finance Corporation, subject to such additional or supervisory provisions as might appear in the directive. It is not necessary for present purposes that we consider many disputed points relative to the regulations and directive. The two phases which we shall now discuss are sufficient to indicate that summary judgment should not have been granted.

[2] Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A.

[3] Porter v. Federated Meat Corporation, 1946, 157 F.2d 276.

[4] 10 Fed.Reg. 4241 et seq.

[5] 10 Fed.Reg. 11154.

[6] 10 Fed.Reg. 4494.

[7] 12 Fed.Reg. 2408.

The directive, as amended,[8] provided:

"Upon a determination by any court of first instance, either criminal or civil, * * * that such applicant has violated any substantive provision of an Office of Price Administration meat or livestock regulation or order, the Office of Price Administration shall certify the determination to Defense Supplies Corporation * * *. Defense Supplies Corporation shall thereupon withhold payment * * *."

The Reconstruction Finance Corporation, in its answer, alleged that these applicants had violated substantive provisions of Office of Price Administration regulations, and prayed that the District Court, in these proceedings, make a determination to that effect. The plaintiffs, in their reply, denied that they had violated O. P. A. regulations and also asserted that the court had no jurisdiction to make the determination.

■ There can be no doubt that the subsidies "were closely articulated with the price control program and operated as compensatory in nature so as to validate a lower level of legal maximum prices than otherwise would have been permissible under the standards laid down in the Act for the guidance of the Price Administrator."[9] On principle, subsidies would not be payable if the applicant did not in fact buy and sell in accordance with the price regulations and thus undergo the disadvantage which the subsidy was designed to alleviate. The requirement of the directive that a court determine the violation was obviously designed to assure judicial consideration of an alleged violation urged by the Price Administrator as a bar to subsidy payments. We think that the Price Administrator's right to secure a judicial consideration of an alleged violation could not be precluded by the applicant's action in bringing suit for the subsidy. To hold that the applicant's suit does preclude the right of the Price Administrator would, in effect, be to hold that the applicant could defeat a court determination of his violation by bringing the suit before the Price Administrator instituted litigation. We do not think that the basic objectives of the subsidy program can be defeated by so technical a view of the legal procedure involved. The directive contemplated, as its explicit terms recite, that a court should determine whether there had been a price violation and that that determination should control the payment vel non of subsidies. We think that when the applicants brought suit for the subsidy payments, the defendant Reconstruction Finance Corporation could properly ask the court for the judicial determination contemplated by the directive. Moreover, on general principles and by the express terms of the regulations of Defense Supplies Corporation,[10] payments made on invalid claims can be recaptured. Useless circuity of action cannot have been intended.

Thus, there is a genuine issue of fact involved in this defense, and should the court determine that there had been violations, the subsidies could be properly withheld under the terms of the directive.

■■ Another phase of the case impels the same conclusion. The directive provided: "The provisions of this Section 7 shall not be construed as prohibiting the imposition of other conditions to the receipt of subsidy payments which are authorized by law."[11] The regulations provided: "Defense Supplies Corporation shall have the right to declare invalid any claim of an applicant who has failed to comply with the requirements of this section."[12] That section required that claims should be filed on forms approved by Defense Supplies Corporation and that all information therein provided for should be supplied. The forms required that the applicant certify that he had not willfully violated any regulation of the Office of Price Administration applicable to the purchase or sale of cattle, or to cattle slaughter, or to the sale or distribution of beef. These appellants signed that certificate on their claims for each month in

[8] Sec. 7(b) (2).

[9] Armour & Co. v. Reconstruction Finance Corporation, Em.App.1947, 162 F.2d 918, 922. See also Schluderberg-T. J. Kurdle Co. v. Reconstruction Finance Corporation, Em.App.1948, 169 F.2d 419, 423.

[10] Sec. 7003.9.

[11] Sec. 7(d).

[12] Sec. 7003.4(d).

the period here involved. In its answers to the complaints in the present actions, the defendant alleged that during the period covered by the claims, the applicants willfully violated O. P. A. price regulations. It says that applicants' certificates were therefore false. In their replies, the plaintiffs denied the allegations of violations. Thus, there was a genuine issue of fact involved in this defense. We think the issue was material to the disposition of the case, because, under the terms of the directive and the regulations, false certification was a proper ground for invalidating the claims. This is not only true under the terms of these rules, but is sound as a general principle.

Appellants rely, in their reply brief, on Earl C. Gibbs, Inc. v. Reconstruction Finance Corporation [13] as supporting their analysis of the regulations and the directive. But that case concerned facts wholly different from those in the present case. There the overcharge was inadvertent and promptly remedied by the company by payment to the Office of Price Administration. The controversy concerned the power of the Reconstruction Finance Corporation to invalidate a claim when the Office of Price Administration did not assert a violation, much less a willful violation. In the present case, after having been brought into court by the companies, the Reconstruction Finance Corporation asserts willful violations and also presents the repeated assertions of the Office of Price Administration to that effect.

It is our conclusion that the District Court properly denied the motions for summary judgments and that the issues of fact, particularly those relative to willful violations of price regulations, must be determined as a prerequisite to judgments in the actions. The Supreme Court said, in Associated Press v. United States,[14] "We agree that Rule 56 [Federal Rules of Civil Procedure] should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them."

The orders of the District Court, denying the plaintiffs' motions for summary judgments, are

Affirmed.

---

[13] Em.App.1948, 169 F.2d 654.
[14] 1945, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013. See also Sartor v.

Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967.